UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY J. DEL FUOCO,

     Plaintiff,

     v.                             Case No. 8:09-cv-1262-T-27MAP

ROBERT E. O'NEILL, in his personal
and individual capacity,

and

ERIC H. HOLDER, JR.,
Attorney General of the United
States of America on behalf of the
U.S. Department of Justice,

     Defendants.

_____/

## MOTION TO DISMISS SECOND AMENDED COMPLAINT BY ROBERT E. O'NEILL  AND UNITED STATES DEPARTMENT OF JUSTICE

     The Defendants, Robert E. O'Neill (O'Neill) and the United States Department of

Justice (DOJ),[1] pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss the Second

Amended Complaint (Dkt. 37) with prejudice.

     Del Fuoco's claims against O'Neill for defamation (Counts One through Fifty-Six)

---

[1] Del Fuoco names Attorney General Holder as a defendant, but apparently intends to bring the claims in Counts Fifty-Seven through Fifty-Nine against the Department of Justice.  Holder is sued in the Second Amended Complaint "on behalf of" DOJ.  Del Fuoco previously has stated that he named Holder "nominally and on behalf of the DOJ." (Dkt. 30, p. 2).  The Privacy Act does not create a cause of action against federal employees individually.  Gonser v. U.S., 2003 WL 21254785 *1, *5 (M.D. Fla. Apr. 24, 2004)("The Privacy Act only authorizes a civil action against the agency."); 5 U.S.C. § 552a(g)(1).  It appears that in Count Sixty, Del Fuoco is asking the Court to hold DOJ and Holder in contempt.  (Dkt. 37, ¶¶ 47 - 49).  No facts are alleged to show that Holder, personally, did anything to violate Fed. R. Crim. P. 6(e).  Moreover, as discussed below, civil contempt is not available to punish an alleged violation of Rule 6(e).

should be dismissed because the alleged statements were absolutely privileged and are not defamatory as a matter of law.  Del Fuoco's claims against DOJ for violation of the Privacy Act (Counts Fifty-Seven through Fifty-Nine) should be dismissed because they fail to state a claim, are barred by the statute of limitations, and fail to allege pecuniary loss.  Del Fuoco's claim against DOJ for Civil Contempt (Count Sixty) should be dismissed because there is no cause of action for civil contempt for a violation of Fed. R. Crim. P. Rule 6(e).

## **FACTS**

Del Fuoco sues O'Neill for alleged defamation "between on or about June 17, 2005 through and including on or about June 5, 2009 and up to the present ... ." (Dkt 37, ¶ 5.)  The only facts Del Fuoco pleads to show alleged defamation are statements O'Neill allegedly made during a deposition O'Neill gave on July 12, 2005 (Dkt. 37, ¶¶ 22, 25 & 35) and statements O'Neill allegedly made in his application to become the next United States Attorney for the Middle District of Florida (Application).[2]  (Dkt. 37, ¶¶ 16, 29, 35, 37 & 41.)

Del Fuoco sues DOJ in Counts Fifty-Seven through Fifty-Nine for "Improper Dissemination" in violation of the Privacy Act (5 U.S.C. § 552a).  In violation of Fed. R.

---

[2] Del Fuoco quotes a portion of information that O'Neill provided in the Application regarding O'Neill's management experience.  O'Neill's entire statement regarding his management experience is attached hereto as **Exhibit 1**.  The Court can consider the entire statement without converting this motion to a motion for summary judgment pursuant to Rule 56.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)(Court could consider an attached newspaper article containing alleged defamatory statement where it was central to plaintiff's claim and its authenticity was not disputed).

Civ. P. 8(a)(2), these Counts incorporate paragraphs 1 through 41 and include allegations regarding the actions of a number of non-parties.  <u>See</u> Dkt. 37, ¶ 43. Because there are three counts, Del Fuoco presumably alleges that DOJ violated the Privacy Act on three occasions, but it is impossible to determine exactly when or how any of these alleged violations occurred.  It appears that the contention in one or more of these counts is that DOJ violated the Privacy Act when DOJ allegedly provided a copy of Del Fuoco's Notice of Proposed Removal to the Merit System Protection Board (MSPB) on May 8, 2006, after Del Fuoco appealed his voluntary resignation.  (Dkt. 37, ¶¶ 30, 43.)  Del Fuoco also apparently contends that DOJ further violated the Privacy Act when, in response to a Freedom of Information Act request, the MSPB allegedly released a copy of Del Fuoco's Notice of Proposed Removal to a reporter and when the reporter sent the Notice of Proposed Removal to the chairman of the Judicial Nominating Commission.  (Dkt. 37, ¶¶ 32, 43.)  <u>See</u> <u>also</u> Dkt. 37, Ex. A, which is a letter in which the reporter states he obtained the notice of proposed removal by filing "a Freedom of Information Act request with the MSPB ... ."

Del Fuoco also sues DOJ in Count Sixty for "Civil Contempt" in violation of 18 U.S.C. § 401(3).  In shotgun fashion, Del Fuoco incorporates all 45 preceding paragraphs, again leaving it to the reader to try to discern the factual basis for this claim.

## MEMORANDUM OF LAW

### I.    Standard of Review

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court addressed the standard of review to apply when evaluating whether a complaint is sufficient to survive a motion to dismiss for failure to state a cause of action.  The Court abrogated the longstanding test first enunciated in Conley v. Gibson, 355 U.S. 41 (1957), which permitted a complaint to stand unless the Plaintiff could prove "no set of facts" that would entitle him to relief.  Twombly, 550 U.S. at 561 (citations omitted).

The Twombly Court went on to adopt a pleading standard that requires a Plaintiff make factual allegations sufficient to state a plausible claim.  The Court stated that although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. 555-56.  See also Ashcroft v. Iqbal, 556 U.S. ___; 129 S.Ct. 1937, 1948 (2009)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at ___; 129 S.Ct. at 1950.

The <u>Twombly</u> Court set out two guiding principles to direct a Court in its review of a complaint's sufficiency.  First, the old standard that a Court must accept as true all allegations in a complaint does not apply to legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at ___; 129 S. Ct. at 1940.  Second, the complaint's claim for relief must be plausible in order to survive a motion to dismiss.  <u>Id.</u> at 556.  In order to make a determination as to the plausibility of a claim for relief, the Court must undertake a context-specific review drawing on the Court's "judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at ___; 129 S. Ct. at 1950.

## II.    Argument

### A.    Del Fuoco's Defamation Claims

Del Fuoco's defamation claims are barred by absolute privilege.  In addition, a significant portion of the claims are barred by the statute of limitations.  Further, the statements on which Del Fuoco relies are not defamatory as a matter of law.

### 1.    Del Fuoco's Defamation Claims Based on the July 12, 2005 Deposition are Barred by the Statute of Limitations and Are Absolutely Privileged.

The Second Amended Complaint contains many conclusory references to "various" and "numerous" "defamatory <u>per se</u> statements."  Pursuant to <u>Twombly</u>, <u>supra</u>, and <u>Iqbal</u>, <u>supra</u>, Del Fuoco must plead plausible facts to support a claim; conclusory statements and labels will not do.  <u>Danner Const. Co., Inc. v. Hillsborough County</u>, 2009 WL 2144716 (M.D. Fla. July 15, 2009).   The only statements that arguably meet the requirements of <u>Twombly</u> and <u>Iqbal</u> are the ones identified as

allegedly contained in O'Neill's July 12, 2005 deposition testimony and in a portion of

the June 5, 2009 Application in which O'Neill discusses his management experience.

(Dkt. 37, ¶¶ 22, 23, 24 & 41.)

Del Fuoco cannot base a defamation claim on O'Neill's July 12, 2005 deposition

testimony because – as pointed out in the motion to dismiss Del Fuoco's original

complaint (Dkt. 5) – Florida has a two-year statute of limitations for defamation and the

deposition testimony was absolutely privileged.  FLA. STAT. § 95.11(g)(4);[3] Anderson v.

Shands, 570 So.2d 1121 (Fla. 1st DCA 1990).  Accordingly, Del Fuoco's defamation

claims relating to O'Neill's deposition testimony are foreclosed as a matter of law.

### 2. O'Neill's Statements in the Application Are Absolutely Privileged.

Del Fuoco claims in Counts One through Fifty-Six that certain statements made

by O'Neill in his application for U.S. Attorney, submitted to the various members of the

Florida Federal Judicial Nominating Commission (FFJNC), are defamatory *per se*. The

alleged defamatory statements are found in ¶ 24 of the Second Amended Complaint

and are taken from O'Neill's application for U.S. Attorney.  See **Exhibit 1**.

The statements made by O'Neill about Del Fuoco in O'Neill's application for U.S.

Attorney are absolutely privileged, as a matter of law, because they were made in an

application submitted to the FFJNC, a quasi-legislative body, established by members

of the U.S. Senate.

The FFJNC was re-established by Florida's United States Senators, the Hon. Bill

---

[3] Del Fuoco was represented by counsel at the July 12, 2005 deposition and knew about the statements at the time they were made.  (Dkt. 1, Ex. J;   Dkt. 1, ¶ 156, Dkt. 1, Ex. L, which is a July 19, 2005 article quoting Del Fuoco as denying statements made in the deposition).

Nelson and Hon. Mel Martinez, in April 2009, to identify highly qualified individuals as finalists to become U.S. District Judges, U.S. Attorneys or U.S. Marshals within each of the three judicial districts within Florida.  <u>See</u> United States Senate, FFJNC, Rules of Procedure, April 2009, attached as **Exhibit 2**.[4]  At the request of the Senators, the FFJNC commences the selection process by inviting applications for specified positions.  Pursuant to FFJNC Rules of Procedure, O'Neill submitted an application for U.S. Attorney.  A blank copy of the application submitted by O'Neill is attached as **Exhibit 3**.[5]  Upon the completion of a "careful and thorough review" of the applications, the FFJNC selects finalists who possess the "professional qualifications, character, integrity, intellect, experience, temperament, professional competence, maturity, capacity for growth, and other characteristics necessary to perform the duties of that office and uphold the public trust."  **Exhibit 2**, Rule 3.

The submitted applications are then ranked by Commission members and selected applicants are then invited to an in-person interview.  <u>Id</u>., Rule 25.  Following the completion of interviews, finalists are identified in closed-door session, and names are forwarded in writing by the FFJNC Chair to the Senators.  <u>Id</u>., Rule 27.  Upon receiving the names of recommended finalists from the FFJNC, the Senators may conduct individual interviews of each of the finalists.  The Presiding Senator then forwards to the White House an unranked list of the finalists.  <u>Id</u>., Rule 29.

---

[4] Attaching this Exhibit does not convert this motion to a motion for summary judgment.  <u>Adamson v. DePoorter</u>, 2007 WL 2900576 *2 (11th Cir. 2007)(exhibit does not convert motion if it is central to Plaintiff's claim and authenticity is not challenged or where Plaintiff refers to the Exhibit which is central to Plaintiff's claim)

[5]<u>I d</u>.

The Chair of the FFJNC is John M. Fitzgibbons, Esq.  **Exhibit 3**.  Defendant O'Neill submitted an application to the FFJNC for the position of U.S. Attorney for the Middle District of Florida.  Pursuant to the instructions on the application, O'Neill sent the original application to Fitzgibbons with a copy sent to each member of the FFJNC.  See **Exhibit 3**, p. 1.  O'Neill was ultimately selected as a finalist by the FFJNC.

The determination of whether absolute immunity shields O'Neill's statements from tort liability is a matter of state law.  Bio/Basics Int'l Corp. v. Ortho Pharm. Corp., 545 F. Supp. 1106, 1113-14 (S.D.N.Y. 1982).  Because the alleged defamatory statements were made in Florida, the substantive law of Florida will provide the rule of decision. After the facts and circumstances of a communication are revealed, the issue of whether a privilege has been established is a question of law for the Court to decide. Tucker v. Resha, 634 So.2d 736, 758 (Fla. 1st DCA 1994).

The courts of many states have adopted the general rule that a witness who appears before a legislative committee is absolutely immune from a lawsuit predicated on the testimony that the witness gave to the committee.  Restatement (Second) of the Law of Torts, § 590A (1977); see, e.g., Scott v. McDonnell Douglas Corp., 112 Cal. Rptr. 609 (1974); Tocco v. Piersante, 245 N.W.2d 356 (1976); Jennings v. Cronin, 389 A.2d 1183 (1978); Logan's Super Markets, Inc. v. McCalla, 343 S.W.2d 892 (1961). Florida is no exception.  Farish v. Wakeman, 385 So.2d 2 (Fla. 4th DCA 1980), appeal dismissed, 394 So.2d 1151 (Fla. 1980).

In Farish, the defendant made certain statements, alleged to be defamatory, under oath before the Florida House of Representatives Select Committee on Impeachment of certain Supreme Court Justices.  The hearing was public and the

8

defendant was under compulsory subpoena at the time of her testimony.  The Court

found that the statements were absolutely privileged and quoted from the trial court:

> The law not only in the State of Florida, but by the overwhelming weight of
> authority in these United States is that defamatory words published by
> witnesses who appear before judicial and legislative tribunals involuntarily
> and pursuant to legal subpoena, which utterances are relevant or material
> to the cause or subject of inquiry are absolutely privileged. See McNayr v.
> Kelly, 184 So.2d 428 (Fla.1966), and Fiore v. Rogero, 144 So.2d 99
> (Fla.2nd DCA 1962); Kelly v. Daro, 47 Cal.App.2d 418, 118 P.2d 37
> (1941).

385 So.2d at 2.

While O'Neill's application to the FFJNC was not compelled or under oath,

unsworn statements in legislative and executive proceedings that are not compelled

may also be absolutely privileged under Florida law.  Robertson v. Industrial Insurance

Company, 75 So.2d 198 (Fla. 1954)(alleged defamatory statements made in unsworn

letter to Insurance Commissioner were absolutely privileged); McNayer v. Kelly, 184

So.2d 428 (Fla. 1966)(alleged unsworn defamatory statements made by county and

municipal officials at legislative or quasi-legislative activities are absolutely privileged);

Kribs v. City of Boynton Beach, 372 So.2d 195 (Fla 4th DCA 1979)(unsworn letter by

City Manager sent to media disclosing reasons for employee's termination absolutely

privileged); Meuller v. The Florida Bar, 390 So.2d 449 (Fla. 4th DCA 1980)(unsworn

statements by employees of Florida Bar absolutely privileged); Kohn v. Davis, 390

So.2d 1246 (Fla. 1st DCA 1980)(unsworn statements made by school board member

absolutely privileged).

The determining factor, in Florida, for absolute immunity to attach to statements

made during the course of quasi-judicial or quasi-legislative proceedings is that they be

connected with, or relevant or material to, the cause at hand or subject of the inquiry. <u>Fiore</u>, 144 So.2d 99 (Fla. 2nd DCA 1962); <u>Stucchio v. Tincher</u>, 726 So.2d 372 (Fla. 5th DCA 1999).  For example, in <u>Daniels v. Patterson</u>, 751 So.2d 678 (Fla. 1st DCA 2000), during a proceeding before the Public Employee Relations Commission (PERC), the representative of a union wrote an unsolicited and unsworn letter to the mayor of Jacksonville, concerning a representative of another union involved in the proceeding, which contained allegedly defamatory statements.  The appellate court affirmed the trial court's  finding that the statements in the letter, even if defamatory, were absolutely privileged because they were "relevant" to the proceeding.  <u>Id.</u> at 679.

Just as the unsolicited and unsworn letter in <u>Daniels</u> was absolutely privileged because it was relevant to the PERC proceeding, the statements in O'Neill's application to the FFJNC are also absolutely privileged because they are relevant to the FFJNC's inquiry.  In addition, while the letter in <u>Daniels</u> was absolutely privileged even though unsolicited, the application submitted by O'Neill was required by the FFJNC as part of the nomination process.  **Exhibit 2**, Rule 19; **Exhibit 3**, p. 1.

The application required by the FFJNC is extensive and requires applicants to disclose an enormous amount of information pertaining to a wide assortment of affairs including, *inter alia*, family status, employers and associations, court appearances, litigated matters, legal activities, business connections, legal proceedings, civic associations, allegations, investigations, a financial statement, and disciplinary matters. The application states that the information requested "is similar to some of the information which will be required from a Presidential nominee by the Senate Judiciary Committee during the Senate confirmation process." **Exhibit 2**, ¶ 1.

The alleged defamatory statements, complained about by Del Fuoco in paragraph 24 of the Second Amended Complaint, were written in the FFJNC application by O'Neill in a section under the heading "Managerial Experience."  O'Neill utilized this section to describe to the FFJNC his management experience in the U.S. Attorney's Office and the difficulties he encountered as a manager dealing with difficult employee situations.  He described the difficult situation he had managing Del Fuoco, a difficult employee in the U.S. Attorney's Office, and the lessons he learned from that experience.  This information was clearly relevant to the inquiry of the FFJNC, which was to evaluate and select the best qualified applicants as finalists for U.S. Attorney to be forwarded to Florida's Senators and eventually the White House.

Accordingly, the purposes for which the absolute privilege was created, i.e., to foster the candid and full disclosure, by witnesses and others, to judicial and legislative bodies, without fear of retribution or reprisal, to enable and further the administration of justice and enactment of legislation, are present here.  In order for the FFJNC to satisfy its charter and select the best, most qualified applicants, who possess the "characteristics necessary to perform the duties of [U.S. Attorney] and uphold the public trust," it is necessary that applicants be afforded absolute immunity to promote the forthright, honest, and open disclosure of their experiences without fear of facing tort liability.  The only requirement is that the statements be relevant to the proceeding, as they were in this instance.

Because the statements made by O'Neill in his application for U.S. Attorney are absolutely privileged, there can be no cause of action for defamation, and Counts One through Fifty Six must be dismissed with prejudice.

11

### 3.    O'Neill's Statements in the Application Were Not Defamatory as a Matter of Law.

Under Florida law, a plaintiff in a defamation case must prove five elements: (1) publication; (2) falsity; (3) knowledge or reckless disregard as to the falsity in a matter concerning a public official, or negligence in a matter concerning a private person; (4) actual damages; and (5) that the statement is defamatory.  <u>Jews For Jesus, Inc. v. Rapp</u>, 997 So.2d 1098, 1106 (Fla. 2008).  At this time, O'Neill is moving to dismiss on the fifth ground because O'Neill's statements in the Application were not defamatory.

To be defamatory, the words or implication must charge a person with an infamous crime or tend to subject him to hatred, distrust, ridicule, contempt or disgrace or tend to injure him in his business and profession.  <u>Adams v. News-Journal Corp</u>. 84 So. 2d 549, 551 (Fla 1956); <u>Seropian v. Forman</u>, 652 So.2d 490, 495 (Fla. 4th DCA 1995); <u>Gill v. Kostroff</u>, 82 F. Supp.2d 1354,1362 (M.D. Fla.2000).  Certain words are defamatory *per se*, unless they are true or uttered in contexts that are privileged or are protected pure opinion.  Words that have been found to be defamatory *per se* include, <u>inter alia</u>, deadbeat, liar, extortionist, thief, extortionist, adulterer, and prostitute.  <u>See</u>, <u>e.g.</u>, <u>Carter v. Sterling Finance Co</u>., 132 So. 2d 430 (Fla. 1st DCA 1961); <u>Shafran v. Parrish</u>, 787 So.2d 177 (Fla. 2d DCA 2001); <u>Axelrod v. Califano</u>, 357 So.2d 1048 (Fla. 1st DCA 1978); <u>Anson v. Paxson Communications Corp</u>., 736 So.2d 1209 (Fla. 4th DCA 1999).

Del Fuoco frequently states in the Second Amended Complaint that O'Neill made defamatory *per se* statements about Del Fuoco in the Application, but the only

statements he specifically identifies as such are O'Neill's statements that:  (1) Del
Fuoco had a "checkered history as a prosecutor" (Dkt. 37, ¶16); (2) Del Fuoco made a
"bizarre" allegation that O'Neill was a member of the Irish Republican Army and O'Neill
traveled to Ireland to meet with IRA operatives, and (3) "[d]ue to [Del Fuoco's] bizarre
fixation on me, it has been suggested to me, by a number of prosecutors, lawyers, and
members of law enforcement, that I should carry a weapon at all times because he is
seemingly unstable."  (Dkt. 37, ¶ 29, 41).[6]

_____These statements simply are not defamatory *per se* and indeed, Del Fuoco
actually is concerned not with the words' literal meaning, but rather, their alleged "gist."
Del Fuoco contends that the statements make him out to be a "bizarre" person and
someone who is "dangerous to the point that Defendant ROBERT E. O'NEILL must
'carry a weapon at all times' in order to defend himself from the Plaintiff ... ." (Dkt. 37,
¶¶ 29, 41.)

Under Florida law, a statement is defamatory if the "gist" or "sting" of the
statement is defamatory unless the words are true, are privileged, or are constitutionally
protected.  Levan v. Capital Cities/ABC, Inc., 190 F.3d 1230, 1240 (11th Cir. 1999).
When assessing the gist of a statement, the Court has a constitutional "gatekeeper"
function[7] and must look at the statements in context.  Levan, supra ("The gist of any

---

[6] Del Fuoco also mentions O'Neill's alleged statement that Del Fuoco is "mentally
ill," (Dkt. 37, ¶ 29), but this statement is not made in the Application.  Del Fuoco
apparently is referencing testimony from the July 12, 2005 deposition.  (Dkt. 37, ¶ 23).
As discussed above, statements made during the deposition are not actionable
because of the statute of limitations and absolute privilege.

[7] In cases raising First Amendment issues, a Court has an obligation to "make an
independent examination of the whole record" in order to make sure that "the judgment

statement within a publication or broadcast is found only by reference to the entire context."); Smith v. Cuban American National Foundation, 731 So.2d 702, 705 (Fla. 3d DCA 1999)("To determine whether a statement is defamatory, it must be considered in the context of the publication") citing Raymer v. Doubleday & Co., 615 F.2d 241, 244 (5th Cir.1980); Rush-Hampton Indus., Inc. v. Home Ventilating Inst., 419 F.Supp. 19, 21 (M.D. Fla.1976); Early v. Palm Beach Newspapers, Inc., 354 So.2d 351, 352 (Fla.1977); Ford v. Rowland, 562 So.2d 731, 735 (Fla. 5th DCA 1990); Hay v. Indep. Newspapers, Inc., 450 So.2d 293, 295 (Fla. 2d DCA 1984); O'Neal v. Tribune Co., 176 So.2d 535, 548 (Fla. 2d DCA 1965); MacGregor v. Miami Herald Publ'g Co., 119 So.2d 85, 88 (Fla. 2d DCA 1960).

The case of Seropian v. Forman, 652 So.2d 490 (Fla. 4th DCA 1995), is particularly instructive in the proper approach to evaluating allegedly defamatory statements in context under Florida law.  In Seropian, the chief of staff at a hospital, in a letter to 400 or more staff physicians, accused the chairman of a hospital district of

---

does not constitute a forbidden intrusion on the field of free expression."  Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984) (quoting New York Times, Co v. Sullivan, 376 U.S. 254, 284-286 (1964).  See also Milkovich v. Lorain Journal Co., 497 U.S. 1, 17, 21 (1990).

Florida law also states that the Court must act as a gatekeeper in defamation cases.  See Smith v. Cuban American National Foundation, 731 So.2d 702, 704 (Fla. 3d DCA 1999)("The court has a 'prominent function' in determining whether a statement is defamatory, and if a statement is not capable of a defamatory meaning, it should not be submitted to a jury." citing Byrd v. Hustler Magazine, 433 So.2d 593, 595 (Fla. 4th DCA 1983); Wolfson v. Kirk, 273 So. 2d 774, 778 (Fla. 4th DCA 1973)("Because the facts giving rise to the tort of defamation may be isolated with clarity, the court naturally has a prominent function in evaluating the pleading and proof to determine whether or not a cause is proper for submission to the jury.").

"influence peddling."  The Court recognized its obligation to make an independent

review of the evidence to make sure it could meet "the exacting requirements of the

First Amendment."  The Court ultimately concluded that even if all facts were resolved

in favor of the plaintiff, the characterization of "influence peddling" was not defamatory

when considered in context, stating:

> In the context of this case, the term influence peddling is, as a matter of
> law, neither defamatory nor a falsehood.  Under Florida law, words are
> defamatory when they charge a person with an infamous crime or tend to
> subject one to hatred, distrust, ridicule, contempt or disgrace or tend to
> injure one in one's business or profession.  Considering everything said in
> all three letters, the term does not impute conduct incompatible with the
> proper exercise of plaintiff's office, or tend to subject him to hatred,
> distrust, ridicule, contempt or disgrace ... .  Nor does the term have the
> settled opprobrious meaning that the terms "on-the-take", or "corrupt
> politician", e.g., or their or their moral equivalents, might have had if they
> had been used instead, as plaintiff contended at trial.  The setting and the
> thoughts expressed in the letters, taken as a whole, suggest that the
> granting of hospital CONs should be based entirely on the need for a new
> provider and the merits of any individual applicant but not on political
> favors or the benefits that one existing provider might derive from allowing
> a new provider in the market.

652 So.2d at 495.

When O'Neill's statements in the Application and their implications are

considered in context, the statements are not defamatory as a matter of law.  The

Application, which was required of all applicants for the position of United States

Attorney, was prepared for a limited and specific audience:  members of the FFJNC

considering O'Neill as a United States Attorney candidate.[8]  The obvious purpose of the

Application was to provide relevant information about O'Neill so that the intended

---

[8] Del Fuoco agrees that the FFJNC was the intended audience by suing in Fifty-Six Counts, one for each member of the FFJNC.  Del Fuoco, not O'Neill, decided to publish the statements in the Application to the general public.

audience could form an opinion about O'Neill.  The passage from which Del Fuoco

quotes is part of an explanation of how O'Neill encountered challenges as a manager,

how he faced those challenges, and what lessons he took away from dealing with those

challenges.  To demonstrate just how great the challenges have been, and how

powerful the resulting lessons, O'Neill provided an example of what certainly would be

one of the greatest challenges any manager could face:  an employee who disobeyed

the manager and, before and after resigning, launched a campaign to destroy the

manager's career by filing baseless complaints with the DOJ Office of Professional

Responsibility, the Florida Bar and the Court, each time making accusations of

unethical, illegal, and unprofessional conduct on the part of the manager.

Viewed in context, the reader comes away with the impression that O'Neill faced

trying circumstances, dealt with them, learned something, and came away a better

manager.  The reader does not come away from the passage with impressions about

Del Fuoco that are defamatory, such as Del Fuoco is dishonest or an incompetent

lawyer.  To the extent that one is inclined to form an opinion about Del Fuoco instead of

O'Neill, the impression is that Del Fuoco was disobedient, disliked by some of his

peers, and inclined to make frequent attacks on his manager through a variety of

means.  This  impression does not rise to the level of being defamatory.  <u>Adams v.

News-Journal Corp</u>. 84 So.2d 549 (Fla. 1955); <u>Seropian v. Forman</u>, 652 So.2d 490 (Fla.

4th DCA 1995).  As discussed below, this impression would be true based on Del

Fuoco's own allegations regarding his conduct.

**4.     O'Neill's Statements in the Application Were Protected Opinion.**

Florida courts have established broad protections for speech, particularly when it

16

comes to opinions.[9]  Florida protects opinions when the factual basis for the opinions are stated or known so that the reader can evaluate whether they want to accept or reject the opinions.  Scott v. Busch, 907 So.2d 662, 668 (Fla. 5th DCA 2005)("'Pure opinions' are not actionable out of a deference for free speech and the First Amendment ... . The facts upon which the opinion is based must be stated and disclosed or known to the audience to whom the publication is made not to be actionable."); Miami Child's World, Inc. v. Sunbeam Television Corp., 669 So.2d 336, 336-37 (Fla. 3rd DCA 1996)("[T]he trial court properly granted summary judgment where the reporter's characterizations constituted pure opinion, the basis of which was fully disclosed within the news broadcast."); From v. Tallahassee Democrat, Inc., 400 So.2d 52, 57 (Fla. 1st DCA 1981), review denied, 412 So.2d 465 (Fla. 1982)("Pure opinion occurs when the defendant makes a comment or opinion based on facts which are otherwise known or available to the reader or listener as a member of the public."); Beck v. Lipkind, 681 So.2d 794, 795 (Fla. 3d DCA 1996)("A careful review of the record reveals that the allegedly defamatory acts are not actionable because they were either true, pure opinion, or protected by a qualified business privilege.") citing Hoon v. Pate Construction Co., 607 So.2d 423, 429 (Fla. 4th DCA 1992), review denied, 618 So.2d 210 (Fla. 1993) ("[O]pinions cannot be defamatory.").  Whether alleged libelous

--------

[9] The United States Supreme Court's First Amendment decisions establish minimum protections for freedom of speech, but state courts are permitted to grant more liberal protections. Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974)("[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.")

statements are pure expressions of opinion or not is for the Court to decide as a matter of law.  Smith v. Taylor County Publishing Company, 443 So.2d 1042, 1044-45 (Fla. 1st DCA 1983).

The opinion exception has been applied to dismiss cases based on statements similar to those on which Del Fuoco relies to bring this action.  See, e.g., DeMoya v. Walsh, 441 So.2d 1120 (Fla. 3d DCA 1983)(calling a government co-worker a "raving maniac" and "raving idiot" in the presence of a small group of other co-workers, "may have been personally insulting, but did not constitute actionable slander."), citing Wetzel v. Gulf Oil Corp., 455 F.2d 857, 862-63 (9th Cir.1972) (calling plaintiff "nuts" and "crazy" in context of and in response to plaintiff's demand that gas station pay for costs incurred when attendant at defendant's gas station allegedly added wrong fluid to brake fluid considered to be non-actionable expression of pure opinion based on disclosed facts); Lampkin-Asam v. Miami Daily News, Inc., 408 So.2d 666, 667 n.1 (Fla. 3d DCA 1981) (article characterizing accusations made by plaintiff as "almost paranoid" was an expression of pure opinion based on facts expressed in the article and therefore, entitled to absolute constitutional protection).

The statements that Del Fuoco had a "checkered history as a prosecutor," made the "bizarre" accusation that O'Neill consorts with terrorists, and has a "bizarre fixation" on O'Neill are statements of opinions protected under Florida law.  O'Neill stated in the Application that Del Fuoco had a "checkered history" because Del Fuoco disobeyed orders given by his supervisors, was disliked by some members of the local bar as evidenced by the fact that they had filed a bar complaint against Del Fuoco, and Del Fuoco had leveled baseless accusations against a number of individuals.  All of these

18

facts – disclosed in the Application to support the opinion – are true and admitted by Del Fuoco.  In the original complaint, Del Fuoco states that in January or February 2001, O'Neill told Del Fuoco to close his investigation into Charles Wells and that in disobedience to O'Neill's instructions, in "2002, Plaintiff continued the investigation of Charles B. Wells ... ."  (Dkt. 1, ¶¶ 83, 84.)  It also is undisputedly true that members of the local bar filed complaints against Del Fuoco and that Del Fuoco had filed several formal complaints accusing many individuals, including several of his former supervisors, of numerous improprieties.  See, e.g., (Dkt. 1, ¶¶ 102, 103, 117 & 123.)

O'Neill's statement that Del Fuoco's repeated accusations that O'Neill consorts with members of the Irish Republican Army is "bizarre" also is an opinion supported by the facts that would be known by the audience to which the statement was made.  The FFJNC was considering O'Neill as a possible United States Attorney based on O'Neill's long service as an Assistant United States Attorney, Acting United States Attorney, and member of numerous Department of Justice task forces.  The FFJNC can decide for themselves, based on facts they know about O'Neill either personally or through the Application, whether Del Fuoco's accusation is bizarre.  O'Neill is entitled to hold and express the opinion that Del Fuoco's accusations are bizarre.

Similarly, O'Neill's statement that Del Fuoco has a "bizarre fixation" on O'Neill is an opinion based on stated and known facts.  In his pleadings in this case, Del Fuoco acknowledges making numerous complaints about O'Neill to various agencies.  See, e.g., Dkt. 37, ¶¶ 16, 21.  The Court also has taken notice of Del Fuoco's conduct in United States v. Thomas Spellissy, et al., Case No. 8:05-cr-475-T-27TGW (Middle District of Florida), in which Del Fuoco filed an affidavit denigrating O'Neill for no valid

19

purpose.  Del Fuoco's fixation is bizarre in light of the fact that Del Fuoco has chosen to focus on O'Neill and ignore the numerous problems he has created for himself as evidenced by, among other things:  (1) Del Fuoco's own documented, repeated, misconduct as revealed in the Notice of Proposed Removal that Del Fuoco – not O'Neill – chose to attach to the publicly-filed pleadings in this case; (2) the findings in <u>Del Fuoco v. Charles B. Wells, et al.</u>, Middle District of Florida, Case No. 8:03-cv-161-T-23TGW, that Del Fuoco made extortionate demands and submitted a false affidavit; and (3) the Court's admonitions in <u>United States v. Thomas Spellissy, et al</u>, Case No. 8:05-cr-475-T-27TGW (Middle District of Florida).

Notwithstanding Del Fuoco's allegations to the contrary, nowhere in the Application does O'Neill state that Del Fuoco is "dangerous to the point that Defendant ROBERT E. O'NEILL must 'carry a weapon at all times' in order to defend himself from the Plaintiff ... ." (Dkt. 37, ¶¶ 29, 41.)  In truth and fact, O'Neill stated in the Application, that "[d]ue to [Del Fuoco's] bizarre fixation on me, it has been suggested to me, by a number of prosecutors, lawyers, and members of law enforcement, that I should carry a weapon at all times because he is seemingly unstable."  O'Neill does not say it is a fact that Del Fuoco is dangerous or that he believes that Del Fuoco is dangerous.  O'Neill does not say that he carries a weapon to protect himself from Del Fuoco or that Del Fuoco is unstable to the point that Del Fuoco would physically attack him.  In context, O'Neill explains that Del Fuoco's undisputed bizarre fixation on O'Neill is such that others have expressed concern.

O'Neill's comments, when read in context, do not have a defamatory meaning and are non-actionable opinion based on disclosed facts.  Therefore, the defamation

20

counts fail to state a cause of action as a matter of law.

**B.    Del Fuoco's Privacy Act Claims**

Congress passed the Privacy Act in 1974 to "protect the privacy of individuals identified in information systems maintained by Federal agencies." Doe v. Chao, 540 U.S. 614, 618 (2004) (quoting the Privacy Act, Pub.L No. 93-579, § 2(a)(5), 88 Stat. 1896). The Privacy Act applies to retrieval of "records" maintained in a "system of records." Specifically, the Act states that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains ... ." 5 U.S.C. § 552a(b). A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

Subsection (v) of the Privacy Act requires the Office of Management and Budget (OMB) to: (1) "prescribe guidelines and regulations for the use of agencies in implementing" the Act; and (2) "provide continuing assistance to and oversight of the implementation" of the Act by agencies. 5 U.S.C. § 552a(v). In fulfilling this role, the OMB has promulgated guidelines that state a system of records exists if: (1) there is an "indexing or retrieval capability using identifying particulars [that is] built into the system"; and (2) the agency "does, in fact, retrieve records about individuals by reference to some personal identifier." OMB Guidelines, 40 Fed. Reg. 28,948, 28,952 (July 9, 1975). The Guidelines require that to be subject to the Act, the records must be accessed by use of a personal identifier. Id. The Privacy Act only applies when an

agency actually has retrieved information from a system of records by accessing information indexed by a person's name. Henke v. United States Department of Commerce, 83 F.3d 1453 (D.C. Cir. 1996)("The OMB guidelines make it clear that it is not sufficient that an agency has the capability to retrieve information indexed under a person's name, but the agency must in fact retrieve records in this way in order for a system of records to exist." Id. at 1460 n.12). See also Maydak v. United States, 363 F.3d 512, 520 (D.C. Cir. 2004)("The government argues that even if the photographs were *retrievable* by personal identifier, the photograph file would not constitute a system of records if the photos were not actually *retrieved* by personal identifier. The government is correct.")(emphasis in original).

The Privacy Act contains a series of security and disclosure rules for agencies and creates a private right of action against an agency that "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D). The section specifies liability on the United States if the agency acted intentionally or willfully and states:

> [T]he United States shall be liable to the individual in an amount equal to the sum of-(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1000; and (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).

### 1.   Del Fuoco's Claim of Unlawful Dissemination of Privacy Act Protected Information Lacks Sufficient Factual Matter, Accepted As True, To State a Claim For Relief That is Plausible on its Face.

The information that Del Fuoco alleges in Counts Fifty-Seven through Fifty-Nine

was disseminated in violation of the Privacy Act is found in Paragraph 43 of his Second

Amended Complaint (Dkt. 37, ¶ 43).  In Paragraph 43 of the Second Amended

Complaint, Del Fuoco claims that "the EOUSA [Executive Office for United States

Attorneys] and Ms. Rita M. Sampson, Esquire, and through the more recent actions of

Mr. Eric Engberg and John M. Fitzgibbons, Esquire, did illegally and wrongfully

disseminate ... information protected by the Privacy Act ... to the U.S. MSPB, the

Florida Federal Judicial Nominating Commission (FFJNC) ... and to the *St. Petersburg*

*Times* ... as reflected in Mr. Eric J. Engberg's January 4, 2010 letter to John M.

Fitzgibbons ... ."  The referenced letter from Engberg to Fitzgibbons is attached to Dkt.

37 as **Exhibit A**.

These allegations are insufficient to state a cause of action for a Privacy Act

violation for several reasons.  First, a Privacy Act claim can only be brought against an

agency of the government.  Engberg and Fitzgibbons are private individuals and are not

employed by the U.S. Department of Justice.  Accordingly, the U.S. Department of

Justice cannot be found to violate the Privacy Act based upon any alleged wrongful

release of Privacy Act protected information by Engberg or Fitzgibbons.  To the extent

Del Fuoco seeks to impose Privacy Act liability on the Department of Justice for the

alleged actions of Engberg and Fitzgibbons, those claims must be dismissed with

prejudice.

Second, Del Fuoco does not identify the information he claims was wrongfully

disseminated by EOUSA and Sampson to the MSPB, FFJNC or the *St. Petersburg*

*Times*.  Del Fuoco attaches as **Exhibit A** the letter from Engberg to Fitzgibbons which

included a document from DOJ to Del Fuoco marked "CONFIDENTIAL AND PRIVACY

23

ACT SENSITIVE".  Dkt. 37, **Exhibit A**.  This document from DOJ to Del Fuoco was not

sent by EOUSA, or Sampson, to the FFJNC or the *St. Petersburg Times;* the document

was sent to Del Fuoco. To the extent that the document may have been sent by

EOUSA to the MSPB, there can be no violation of the Privacy Act because the

document was required to be filed by the agency according to the MSPB's governing

regulations. See 5 C.F.R. § 1201.25(c)(Agency is required to provide MSPB with all

documents contained in the agency record of action.)  Accordingly, there can be no

Privacy Act liability associated with the document Del Fuoco attaches as **Exhibit A**.

Moreover, according to the letter from Engberg dated January 4, 2010 to Fitzgibbons,

Engberg obtained the "Proposal of Removal" from a FOIA request to the MSPB, not

from DOJ.

Third, Del Fuoco makes no allegation in the Second Amended Complaint that

any allegedly Privacy Act protected information was retrieved from a system of records

maintained by DOJ and indexed by Del Fuoco's name.  Del Fuoco alleges, only

generally and without description or detail, that there was a wrongful dissemination of

Privacy Act information.

A post-Twombly case involving similar allegations to those made by Del Fuoco is

Gerlich v. U.S. Dept. of Justice, 2009 WL 2959884 (D.D.C. Sept. 16, 2009), in which

the district court was faced with Privacy Act claims brought by unsuccessful applicants

for employment with the Department of Justice.  Plaintiffs were seeking, *inter alia*, to

recover damages for an adverse personnel action actually caused by an inaccurate or

incomplete personnel record.  The Plaintiffs specifically alleged that "Defendant [DOJ]

maintained records about plaintiffs in connection with its determination of the results of

their Honors Program and [SLIP] applications, records which were part of a system of records within the meaning of the Privacy Act." Id. at *19 n.13.  The Court found that "[s]uch allegations, which amount to nothing 'more than labels and conclusions,' are plainly insufficient to meet plaintiffs' pleading burden. See Twombly, 550 U.S. at 555-56, 127 S. Ct. 1955." Id.  See also Jackson v. Veterans Administration, 503 F. Supp. 653, 655 (D.C. Ill.1980)("There is no provision of the Privacy Act which prohibits providing information to a third party without prior consent of the subject which a federal official has acquired from personal observation or knowledge obtained from sources other than a record within the meaning of the Privacy Act.  To hold otherwise is inconsistent with Congressional intent and with the effective administration of government programs.")

Del Fuoco's conclusory and non-specific allegations do not satisfy the Twombly requirement that Del Fuoco plead sufficient factual matter, that, if accepted as true, states a claim for relief that is plausible on its face.  Del Fuoco fails to allege facts showing that specific records were retrieved from a system of records maintained by DOJ and that the information was indexed by Del Fuoco's name.  Gerlich, supra, at *12 (To state a claim for relief [under the Privacy Act] plaintiffs must necessarily allege that the records at issue were actually incorporated into a "system of records"); Henke, supra, at 1460, n.12.)

Accordingly, Del Fuoco has failed to state a plausible claim for relief against the U.S. Department of Justice for violation of the Privacy Act and Counts Fifty-Seven through Fifty-Nine must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**2.      Del Fuoco's Privacy Act Claims Must be Dismissed for Failure to Allege Actual Pecuniary Loss.**

An essential element of a claim brought under Section 552a(g)(4) of the Privacy Act is proof that the Plaintiff suffered "actual damages."  Perry v. Bureau of Prisons, 371 F.3d 1304, 1305 (11th Cir. 2004) (quoting Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990)).  "Actual damages" as used in the Privacy Act means that a Plaintiff can only recover monetary damages "for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." Fitzpatrick v. IRS, 665 F.2d 327, 331 (11th Cir. 1982).  See also Fanin v. U.S. Dept. of Veterans Affairs, 572 F.3d 868 (11th Cir. 2009) (obtaining monetary damages under the Privacy Act requires proof of "actual damages" and in the Eleventh Circuit that means pecuniary losses); Doe v. Chao, 540 U.S. 614 (2004) (plaintiff must show actual damages to receive the statutory minimum of $1,000 under the Privacy Act).

In Counts Fifty-Seven through Fifty-Nine of the Second Amended Complaint, Del Fuoco alleges that "[a]s a result of Defendant's violations of the Privacy Act, Plaintiff Jeffrey J. Del Fuoco has suffered adverse and harmful effects, including but not limited to, mental and emotional distress, trauma, extreme embarrassment, humiliation and lost or jeopardized present or future financial opportunities, including his ability to provide for his family, inter alia."  (Dkt. 37, ¶ 45).

Del Fuoco's statement that he suffered mental and emotional distress, trauma, extreme embarrassment and humiliation as a result of an alleged Privacy Act violation is insufficient, as a matter of law, to establish the essential element of "actual damages" or pecuniary loss to state a claim for relief pursuant to Section 552a(g)(4).  The only

question then, is whether the generalized allegation of harm characterized as "lost or jeopardized present or future financial opportunities" for an alleged violation of the Privacy Act is sufficient to state a claim under Twombly and Iqbal.  It is not.

As discussed, *supra*, in order to state a claim upon which relief can be granted, it is incumbent upon the Plaintiff to provide the "grounds" of his "entitle[ment] to relief," which requires more than labels, conclusions, and formulaic recitation of the elements of a cause of action.  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Applying this general standard to Del Fuoco's Privacy Act claims means he is required to provide enough factual matter, taken as true, to establish the plausibility of each essential element of his claim.  An essential element of his Privacy Act claim is establishing "actual damages" which means pecuniary loss.  Fanin, 572 F.3d at 872.  Del Fuoco's statement, a naked assertion unsupported by fact, that he suffered "lost or jeopardized present or future financial opportunities" (emphasis added) is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" which was criticized and found lacking in Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).  The quoted statement of harm fails to provide sufficient notice to the Defendant of the kind of pecuniary loss allegedly suffered by Del Fuoco.  In fact, it appears that Del Fuoco himself is uncertain whether the undisclosed financial opportunities are "lost" or only "jeopardized" or whether those opportunities are in the "present" or "future."

Accordingly, because Del Fuoco has provided only a formulaic recitation of the essential element of "actual damages" required to establish a violation of the Privacy Act, his claims in Counts Fifty-Seven through Fifty-Nine must be dismissed for failure to

27

state a claim upon which relief can be granted.

### C.     Del Fuoco's Civil Contempt Claim

#### 1.     There Is No Civil Contempt For a Violation of Rule 6(e).

In Count Sixty, Del Fuoco alleges that Attorney General Holder, through his agent, Rita Sampson, violated Fed. R. Crim. P. 6(e) by intentionally releasing protected Grand Jury information.  Del Fuoco seeks a judgment of civil contempt, pursuant to 18 U.S.C. § 401(3).

Federal Rule of Criminal Procedure 6(e) prohibits the disclosure, by an attorney for the government, of matters occurring before a grand jury, except in specified and limited circumstances.  A knowing violation of Rule 6 may be punished as a criminal contempt.

Del Fuoco seeks a judgment of civil contempt for violation of Fed. R. Crim. P. 6(e).  In the Eleventh Circuit, there is no private right of action and no civil contempt for violation of Rule 6.  See Blalock v. United States, 844 F.2d 1546, 1558 (11th Cir. 1988) ("The Rule's statement that '[a] knowing violation . . . may be *punished* as a contempt of court' obviously implies that such violation constitutes *criminal,* as opposed to *civil* contempt.")(emphasis in original).

Because no cause of action lies in civil contempt for a violation of Fed. R. Crim. P. 6(e), Count 60 must be dismissed with prejudice.

### III.  Conclusion

Wherefore, based upon the foregoing reasons and authorities cited, Defendants request that the Court dismiss the Second Amended Complaint with prejudice.

Respectfully submitted,

A. BRIAN ALBRITTON
United States Attorney

By:    /s/ Ralph E. Hopkins
Ralph E. Hopkins
Assistant United States Attorney
Florida Bar No. 0972436
501 W. Church Street, Suite 300
Orlando, Florida 32805
Telephone: (407) 648-7562
Facsimile: (407) 648-7588
Email: Ralph.Hopkins@usdoj.gov
Lead Counsel


By:    /s/ Bradley M. Bole
Bradley M. Bole
Assistant United States Attorney
Florida Bar No. 0371009
501 W. Church Street, Suite 300
Orlando, Florida 32805
Telephone: (407) 648-7514
Facsimile: (407) 648-7588
Email: Bradley.Bole@usdoj.gov
Co-Counsel


## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and will send notice of the filing by U.S. Mail to the following Non CM/ECF participant:

Jeffrey J. Del Fuoco, Esquire
Plaintiff, Pro Se
1579 Eagles Reach
Tarpon Springs, FL 34688

/s/ Ralph E. Hopkins
Assistant United States Attorney

29