UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY J. DEL FUOCO,

           Plaintiff,

vs.                                      Case No. 8:09-CV-1262-T-27MAP

ROBERT E. O'NEILL; et al.,

           Defendants.

_____/

## ORDER

    **BEFORE THE COURT** is the Motion to Dismiss Second Amended Complaint by Robert

E. O'Neill and United States Department of Justice (Dkt. 40) and Plaintiff's response in opposition

(Dkt. 44). Upon consideration, the Motion to Dismiss Second Amended Complaint by Robert E.

O'Neill and United States Department of Justice (Dkt. 40) is GRANTED.

### Summary of Counts

    In Counts One through Fifty-Six of his Second Amended Complaint, Plaintiff purports to

bring state law claims for libel *per se* against Defendant Robert E. O'Neill (O'Neill), premised on

(1) O'Neill's deposition testimony in a civil action brought by Plaintiff against former Manatee

County Sheriff Charles Wells, and (2) the submission and distribution of O'Neill's application to

be appointed as the United States Attorney for the Middle District of Florida to the fifty-six members

of the Florida Federal Judicial Nominating Commission (FFJNC) (Dkt. 37, ¶¶ 12, 22, 37). Plaintiff

alleges that O'Neill's deposition testimony defamed him and that O'Neill's application contained

false statements about him, which Plaintiff alleges were "libelous and defamatory *per se.*" (Dkt. 37,

¶ 40).

1

In Counts Fifty-Seven through Fifty-Nine, Plaintiff purports to bring claims pursuant to the Privacy Act (5 U.S.C. § 552a) against the U.S. Department of Justice (DOJ) and Eric H. Holder, Attorney General of the United States (Holder), premised on the allegation that they "did illegally and wrongfully disseminate defamatory *per se,* false, incomplete and other information protected by the Privacy Act of 1974 of and concerning Plaintiff . . . ." (Dkt. 37, ¶ 43).

In Count Sixty, Plaintiff seeks a judgment of civil contempt pursuant to 18 U.S.C. § 403(3) against Holder and DOJ based on Plaintiff's allegation that they released Rule 6 grand jury information in violation of this Court's standing orders and without judicial approval (Dkt. 37, ¶¶ 47-48).

## Discussion

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A conclusory statement of the elements of a cause of action will not suffice to state a claim. *Id.* While the Court must accept all factual allegations as true in evaluating a motion to dismiss under Rule 12(b)(6), the tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which, when taken as true, "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

2

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### Counts One through Fifty-Six

Defendants contend that Counts One through Fifty-Six should be dismissed because the statements Plaintiff relies on "were absolutely privileged and are not defamatory as a matter of law" and that a portion of those claims are barred by the applicable statute of limitations (Dkt. 40 at p. 2).

Plaintiff counters that "immunity is an affirmative defense that is not properly raised in a motion to dismiss." (Dkt. 44, p. 10). The Florida case on which Plaintiff relies, however, *Fariello v. Gavin*, 873 So. 2d 1243 (Fla. 5th DCA 2004), expressly acknowledges: "There may, however, be exceptional cases in which the facts giving application to the defense are clearly apparent on the face of the complaint, in which case the defense may be raised by motion to dismiss." 873 So. 2d at 1245. *Fariello* likewise acknowledges that the statute of limitations may be raised in a motion to dismiss "if its applicability is demonstrated on the face of the complaint or exhibits." *Id.*

Federal procedure likewise allows these defenses to be raised in a motion to dismiss if apparent on the face of the complaint. *See Robinson v. Schafer*, 305 F. App'x. 629 (11th Cir. 2008); *Brotherhood of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. Northern Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008); *Bricker v. Cobb County Gov't & Personnel*, No. 10-10263, 2010 WL 3817591, at *1 (11th Cir. Oct. 1, 2010). It follows that a Rule 12(b)(6) dismissal is appropriate if it is apparent from the face of the complaint that the claim is time barred. *Id.* Here, it is apparent from the face of Plaintiff's Second Amended Complaint that the

3

statute of limitations bars those portions of his claims based on O'Neill's deposition testimony. Moreover, it is apparent that absolute privilege attaches to some of the alleged defamatory statements Plaintiff relies on.

**Statute of limitations**

Counts One through Fifty-Six rely in part on the July 12, 2005 deposition testimony O'Neill gave in a civil action initiated by Plaintiff, as well as O'Neill's statements in his June 5, 2009 U.S. Attorney application.[1] Defendants first contend that O'Neill's deposition testimony was given more than two years before this action was filed and therefore Plaintiff's claims for defamation predicated on that testimony are barred by the applicable two-year statute of limitations.[2] Plaintiff does not acknowledge or address this argument in his response (Dkt. 44).

In Florida, a two-year statute of limitation applies to actions for libel or slander. Fla. Stat. § 95.11(4)(g). A cause of action for libel or slander accrues on publication of the alleged defamatory statements. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 115 (Fla. 1993) (applying Fla. Stat. § 770.07 to "all civil litigants."); *Dessasau v. Cook*, Nos.

---

[1] Defendants correctly point out that the Second Amended Complaint, which incorporates all preceding allegations into each successive count, constitutes a "shotgun pleading." The Eleventh Circuit expressly disapproves of "shotgun pleadings," because of their negative effect on the "orderly, efficient, and economic disposition of disputes." *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.10 (11th Cir. 2002). By incorporating the preceding paragraphs of the Second Amended Complaint, Counts Fifty-Seven through Sixty suffer the very problem for which shotgun pleadings are criticized. These purported claims incorporate prior allegations of fact which are irrelevant to the claims Plaintiff attempts to plead, requiring the "district court [to] sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted"). *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d at 1296 n.9 (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991), *cert. denied*, 510 U.S. 918 (1993)).

For these reasons alone, the Second Amended Complaint is subject to being dismissed *sua sponte*. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006).

[2] This action was filed on July 6, 2009 (Dkt. 1). O'Neill's deposition took place on July 12, 2005, in a civil lawsuit initiated by Plaintiff, according to the Second Amended Complaint (Dkt. 37, ¶ 22).

99-14946, 00-12552, 2001 WL 34395880, at *3 (11th Cir. Mar. 15, 2001). Here, it is readily apparent from the face of the Second Amended Complaint that Plaintiff's defamation claim(s), to the extent he relies on O'Neill's deposition testimony, are barred by the applicable statute of limitations. Counts One through Fifty-Six are therefore subject to dismissal as to O'Neill's deposition testimony.

**Absolute privilege**

Defendants next contend that Plaintiff's claims are barred by absolute privilege (Dkt. 40, pp. 5, 6-11). For the sake of completeness, although Plaintiff's defamation claim(s) based on O'Neill's deposition testimony are barred by the applicable statute of limitations, Defendants' contention of absolute privilege will be addressed as to that testimony.

Under Florida law, O'Neill's deposition testimony cannot support Plaintiff's defamation claim(s). In Florida, deposition testimony, even if defamatory, malicious and knowingly false, "is absolutely privileged and cannot form the basis of liability for defamation." *Anderson v. Shands*, 570 So. 2d 1121, 1122 (Fla. 1st DCA 1990) ("Relevant testimony given in the due course of a judicial procedure is absolutely privileged and cannot form the basis of liability for defamation.") (citing *Campbell v. LoPucki*, 345 So. 2d 860 (Fla. 1st DCA 1977), *Sussman v. Damian*, 355 So. 2d 809 (Fla. 3d DCA 1977), and *Ponzoli & Wassenberg, P.A. v. Zuckerman*, 545 So. 2d 309 (Fla. 3d DCA), *rev. denied*, 554 So. 2d 1170 (Fla. 1989)). A deposition is considered part of a judicial procedure for purposes of the absolute privilege against civil liability. *Anderson v. Shands*, 570 So. 2d at 1122.

In response to Defendants' contention that O'Neill's testimony (and application statements) is absolutely privileged, Plaintiff argues that "Defendant O'Neill did not act within the scope of his authority here, and Defendant DOJ cannot legitimately attempt, post-hoc, to justify Defendant

O'Neill's clear misconduct" (Dkt. 44, p. 6). Although Plaintiff argues at length that O'Neill is not entitled to absolute immunity, he focuses exclusively on a contention Defendants do not advance, that O'Neill enjoys an absolute privilege because of his "status as a federal prosecutor." (Dkt. 44, p. 3).[3] Defendants do not contend that O'Neill or the DOJ enjoy prosecutorial immunity or absolute privilege because their actions occurred during the scope of their official duties. Rather, Defendants rely on Florida law of privilege.

Under Florida law, O'Neill's deposition testimony is "absolutely privileged and cannot form the basis of liability for defamation." *Anderson v. Shands*, *supra*. To the extent, therefore, Plaintiff relies on O'Neill's deposition testimony to support his defamation claim(s), those claims are subject to dismissal without leave to amend.[4]

With regard to O'Neill's U.S. Attorney application, Defendants argue that O'Neill's allegedly defamatory statements are "absolutely privileged" because the statements were "relevant to the FFJNC's inquiry" and "[t]he application required by the FFJNC is extensive and requires applicants to disclose an enormous amount of information . . . ." (Dkt. 44, p. 10). As Defendants correctly point out, the FFJNC was established by Florida Senators to assist them in recommending the most qualified applicant(s) for nomination by the President and confirmation by the Senate. (Dkt. 40-1,

---

[3] Plaintiff does not even address Florida law governing claims of defamation and privilege. Rather, he cites various cases dealing with privilege or prosecutorial immunity in the context of federal claims against government officials, including prosecutors, rather than focusing on absolute privilege as it applies to testimony in the context of a Florida defamation action. *See Briggs v. Goodwin*, 569 F.2d 10, 15 (D.C. Cir. 1977) ("A government employee is not to be protected merely by virtue of his official position for conduct undertaken outside the scope of his authority."); *al-Kidd v. Ashcroft*, 580 F.3d 949, 957-58 (9th Cir. 2009), *cert granted in part*, 131 S. Ct. 415 (2010); *Helstoski v. Goldstein*, 552 F.2d 564, 565 (3d Cir. 1977).

[4] Plaintiff does not argue that O'Neill's responses to his attorney's questions during the deposition were not relevant to that proceeding.

Exhibit 2).[5]  While Defendants' description of the FFJNC's role in the U.S. Attorney selection process may accurately be described as quasi-legislative, O'Neill's participation in that process does not necessarily correlate with the role of a compelled witness in a legislative hearing, who would otherwise enjoy absolute immunity under Florida law from libel actions.[6]

Implicit in Defendants' argument is the contention that O'Neill's answers to the questions in the application were in some way compelled, and that as a result, he enjoys absolute immunity because the FFJNC's function was quasi-legislative.[7]  Defendants' argument is not fully developed, however.

Although neither party cites authority directly on point, Florida cases discussing absolute immunity do not directly support Defendants' contention.  In Florida, absolute privilege attaches to (1) relevant testimony in a judicial or quasi-judicial proceeding, *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992), (2) an official's statements made in the scope of the official's duties, *Crowder v. Barbetti*, *supra*, and (3) a witness' testimony to a legislative body, *Fiore v. Rogero*, 144 So. 2d 99,

---

[5] The Rules of the FFJNC, filed by Defendants (Dkt. 40-1, Exhibit 1), are not reasonably subject to dispute and therefore may be considered, at least to put in context the committee's function. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010).

[6] In Florida, one who testifies before a legislative body or committee thereof is "generally subject to the same rules of privilege accorded similar testimony in judicial proceedings. *Fiore v. Rogero*, 144 So. 2d 99, 102 (Fla. 2d DCA 1962). Indeed, in Florida, "defamatory words published by witnesses who appear before judicial and legislative tribunals involuntarily and pursuant to legal subpoena, which utterances are relevant or material to the cause or subject of inquiry are absolutely privileged." *Farish v. Wakeman*, 385 So. 2d 2, 2 (Fla. 4th DCA 1980). One who appears voluntarily seemingly enjoys a conditional privilege. *See Fiore*, 144 So. 2d at 102-03.

[7] Plaintiff argues that O'Neill's statements may implicate a qualified privilege, which Defendants do not address in their motion. *See* Restatement (Second) of Torts §§ 593, 595; *Fiore v. Rogero*, 144 So. 2d at 103; *Nodar v. Galbreath*, 462 So. 2d 803, 809-10 (Fla. 1984). Where a qualified privilege attaches, "[i]n overcoming a qualified privilege, a plaintiff would have to establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice-i.e., that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (citing *Nodar v. Galbreath*, 462 So. 2d at 806).

103 (Fla. 2d DCA 1963). O'Neill's application does not fall within any of these recognized forums. His statements were voluntary, did not address his official duties, and cannot be fairly characterized as testimony in the sense of a witness subpoenaed to testify at a judicial or legislative proceeding.

Notwithstanding, there are undoubtedly significant public policy reasons favoring the immunization of applicants for appointment to federal office from being sued for defamation based on their candid responses to questions required to be answered in the application process. Foremost among those policy reasons is that the President of the United States and members of the United States Senate will rely on the information disclosed by the applicant. In this particular setting, O'Neill was applying to be appointed as the chief law enforcement officer of a federal district, a position carrying with it significant responsibilities. Without doubt, the need for full and candid disclosure of material information by the applicant must be considered against the rights of those, like Plaintiff, who may be mentioned or discussed by the applicant.

With respect to absolute immunity against defamation actions, Florida recognizes the need to balance two important and competing interests, described by one scholar as "'the right of the individual, on one hand, to enjoy [a] reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive, and judicial departments of government.'" *Fridovich,* 598 So. 2d at 68 (citing Van Vechten Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 464 (1909)). Although that statement was made in the context of judicial immunity, the same privilege applies with respect to judicial, legislative and executive officials. *McNayr v. Kelly*, 184 So. 2d 428, 432 (Fla. 1966) ("We think that there should be no distinction between the judicial, legislative and the executive branches of government so far as absolute privilege is concerned.").

Absolute immunity has been applied in limited circumstances, involving "certain persons [who], because of their special position or status, should be free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests." *Fridovich*, 598 So. 2d at 68 (citing Restatement (Second) of Torts § 584 at 243); *McNayr v. Kelly*, 184 So. 2d at 430 ("It seems to be well settled in this State that words spoken or written by public servants in judicial and legislative activities are protected by absolute privilege from liability for defamation.").

While O'Neill cannot be said to have been performing official duties as an executive officer of the United States when he applied for the position of United States Attorney (*see* Restatement (Second) of Torts § 591), logic and reason suggest that the same principles underlying absolute immunity should apply to those seeking appointment as United States Attorney. That argument must be left for another day, however, as it is not fully developed by Defendants nor addressed by Plaintiff. To the extent Defendants rely on absolute immunity under Florida law, that argument must be rejected for purposes of the instant motion to dismiss.

**Libel**

Defendants next contend that the statements in O'Neill's application Plaintiff complains of are not defamatory as a matter of law (Dkt. 40, p. 12). Plaintiff alleges that O'Neill's statements about Plaintiff are "defamatory *per se*." (Dkt. 37, ¶¶ 5,16, 18, 20, 24, 29, 40, 41). "Under Florida law, a statement is not defamatory unless the 'gist' or 'sting' of the statement is defamatory." *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999). The statement must be considered in the context of the entire publication. *Id.*

A cause of action for defamation in Florida requires four elements: (1) defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement

caused injury to the plaintiff. *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. 2d DCA 2002). A false publication is actionable *per se* if the publication is such that "its natural and proximate consequences necessarily caused injury to the plaintiff in his social, official and business relations of life." *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th DCA 1973), *rev. denied*, 279 So. 2d 32 (Fla. 1973) (quoting *Sharp v. Busey*, 187 So. 779 (Fla. 1939)). More specifically, to constitute libel *per se*, the statements must, "when 'considered alone without innuendo,' . . . contain (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955).

Where the statement alleged to be defamatory cannot possibly have a defamatory or harmful effect, "the court is justified in . . . dismissing the complaint for failure to state a cause of action . . . ." *Wolfson*, 273 So. 2d at 778. Where the words are "reasonably capable of two or more meanings one of which is defaming, the trier of fact should determine whether the language used was actually understood in its defamatory sense." *Id.*

In determining whether O'Neill's statements are libelous *per se*, as Plaintiff contends, guidance can be found in this passage from a 1955 Florida case:

> The language used will be given neither a mild nor harsh construction but the words will be construed "in that sense in which they may be understood and in which they appear to have been used and according to the ideas which they were adopted to convey to those who hear them, or to whom they are addressed."

*Adams*, 84 So. 2d at 551.

The alleged defamatory statements are quoted in the Second Amended Complaint (Dkt. 37 ¶ 24, pp. 24-25). Plaintiff's description of O'Neill's statements can be summarized as alleged false statements describing (1) "internal personnel matters and alleged disciplinary and counseling actions as Plaintiff's supervisor in the U.S. Attorney's Office . . . along with comments about Plaintiff's so-called 'checkered history as a prosecutor in the office'" and (2) "clearly" stating "that the Plaintiff is . . . 'bizarre' and dangerous . . ." (Dkt. 37, ¶¶ 16, 29).

The statements Plaintiff complains of, considered in the context in which they were made, are not defamatory as a matter of law. O'Neill's statements were in response to a request for him to address his "Management Experience." (Dkt. 40-1).[8] As a prelude to his reference to Plaintiff, O'Neill stated that "[s]erving in management can also be extremely challenging at times because you have to deal with a myriad of personnel issues." *Id.* The statements which follow merely describe how O'Neill was challenged as Plaintiff's supervisor by conduct which O'Neill considered to be inappropriate and which generated acrimony between Plaintiff, the defense bar, and O'Neill himself. O'Neill's statements are nothing more than an opinionated description of Plaintiff's performance as an Assistant United States Attorney from O'Neill's perspective as Plaintiff's supervisor. O'Neill does not accuse Plaintiff of dishonesty or illegal activities, merely conduct which O'Neill considered "erratic," "bizarre," and inappropriate for an Assistant United States Attorney.

As Defendants accurately suggest, when viewed in its proper context, O'Neill was merely describing for the FFJNC the challenges he faced in managing and supervising a prosecutor whose

---

[8] That portion of O'Neill's application to which his statements responded are central to Plaintiff's claims and therefore may be considered. *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, supra.* Defendants filed O'Neill's entire statement. (Dkt. 40-1, Exh. 2).

actions had, from O'Neill's perspective as a supervisor, generated rancor among members of the bar and complaints with the court. O'Neill's experience in that regard was material to an evaluation of his qualifications. Further, those statements provided relevant context for the strained relationship between O'Neill and Plaintiff, a subject destined to be considered by the committee in assessing O'Neill's managerial skills.

O'Neill disclosed to the committee that Plaintiff had filed complaints against him with the DOJ Office of Professional Responsibility, which undoubtedly was material to an evaluation of O'Neill's qualifications. O'Neill's explanation of why those complaints were, in his opinion, "bizarre," does not rise to the level of libel. Likewise, O'Neill's description of what he considered to be Plaintiff's "bizarre fixation on me" is not libelous. Further, O'Neill's statement that Plaintiff's conduct generated concerns among law enforcement, prosecutors and attorneys that Plaintiff was "seemingly unstable" was not a statement of fact, merely a qualified opinion expressed by others, which O'Neill did not embrace as fact.

In summary, O'Neill's statements do not constitute defamation *per se* under Florida law. Plaintiff's spin on what O'Neill's statements implied or suggested is not determinative. Rather, an objective approach is appropriate, or what has been described as what "the common mind would understand." *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla. 1953). Considering the context in which they were made, the statements complained of cannot fairly be said to have subjected Plaintiff "to hatred, distrust, ridicule, contempt or disgrace," or to have injured Plaintiff in his trade or profession.[9]

---

[9] It is undisputed that at the time O'Neill made the statements, Plaintiff was no longer employed as an Assistant United States Attorney and was not licensed to practice law in Florida.

**Protected opinion**

Even if O'Neill's statements could arguably subject Plaintiff to distrust, ridicule or disgrace, the statements constituted protected opinion under Florida law. Pure opinions are not actionable in Florida. *Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d 451, 459 (Fla. 5th DCA 1999), *rev. denied,* 760 So. 2d 948 (Fla. 2000); *From v. Tallahassee Democrat, Inc.,* 400 So. 2d 52, 57 (Fla. 1st DCA 1981), *rev. denied,* 412 So. 2d 465 (Fla. 1982); *DeMoya v. Walsh,* 441 So. 2d 1120 (Fla. 3d DCA 1983); *Nodar v. Galbreath, supra.* Pure opinion includes comments or opinions based on facts which are disclosed in the comment itself or which are otherwise known or available to the recipient as a member of the public. *Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d at 459; Restatement (Second) of Torts § 566.

On the other hand, mixed expression of opinion is actionable in Florida. A comment constitutes a mixed expression of opinion when it is based on facts regarding the plaintiff or his conduct that have not been included in the comment or are assumed to exist. *Id.* at p. 459-60. Whether a particular statement is pure opinion or mixed opinion is a question of law. *Sullivan v. Barrett,* 510 So. 2d 982, 983 (Fla. 4th DCA 1987); *From v. Tallahassee Democrat, Inc., supra.*

> In determining whether the statement is one of pure or mixed opinion, the court must examine the statement in its totality and the context in which it was uttered or published. The court must consider all of the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement and consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d at 460.

Applying these guidelines, O'Neill's statements do not constitute "mixed opinion." O'Neill's statements that Plaintiff had a "checkered history as a prosecutor," made a "bizarre" accusation

13

against O'Neill, and had a "bizarre fixation" on O'Neill are statements of pure opinion protected under Florida law.   With respect to O'Neill's comment that Plaintiff was "fixated on me" and because of that, others had suggested that he arm himself, the facts on which those opinions were based were disclosed in the statement itself.  Moreover, O'Neill qualified those suggestions.  He did not state as a factual matter that Plaintiff was unstable, only that others perceived him to be "*seemingly* unstable" (emphasis added).   Likewise, O'Neill qualified his reference to "abuses" committed by Plaintiff as a prosecutor to those which the defense bar "perceived," rather than stating as a matter of fact that Plaintiff had committed some undefined abuses.

In sum, considering O'Neill's statements in the context in which they were made, they were nothing more than abstract opinions, or opinions based on facts disclosed and explained in the statement.  The statements were material to O'Neill's qualifications and would be expected to be disclosed and explained by an applicant.  They were intended for a discrete audience which would assess O'Neill's qualifications, including his experiences as a supervising Assistant United States Attorney.  As such, they constitute pure opinion and are not actionable.  Counts One through Fifty-Six are due to be dismissed, without leave to amend.

### Counts Fifty-Seven through Fifty-Nine

In Counts Fifty-Seven through Fifty-Nine, Plaintiff purports to bring claims pursuant to the Privacy Act (5 U.S.C. § 552a) against the DOJ and Eric H. Holder, Attorney General of the United States.  Specifically, Plaintiff alleges that these Defendants disseminated information concerning Plaintiff which was protected by the Privacy Act of 1974. (Dkt. 37, ¶ 43).  Defendants contend that Counts Fifty-Seven through Fifty-Nine should be dismissed because they fail to state a cause of action and do not allege pecuniary loss. (Dkt. 40 at p. 2).

14

The Privacy Act, 5 U.S.C. § 552a(g)(1)(D), creates a private cause of action against an agency which fails to comply with its provisions, or rules promulgated thereunder, if the action complained of had an adverse effect on an individual. In general, the Act prohibits an agency from disclosing any record of an individual contained in a system of records except pursuant to a request or consent of the individual to whom the record pertains, and provides several exceptions not applicable here. 5 U.S.C. § 552a(b). When an agency is determined to have intentionally or willfully violated the Act, an aggrieved person may bring an action for "actual damages sustained by the individual" as a result of the failure to comply with the Act. 5 U.S.C. § 552a(g)(4).

In the Second Amended Complaint, Plaintiff alleges that Defendants, without obtaining Plaintiff's consent "did illegally and wrongfully disseminate defamatory *per se*, false incomplete and other information protected by the Privacy Act of 1974 of and concerning Plaintiff to the U.S. MSPB, the Florida Federal Judicial Nominating Commission (FFJNC), all 56 of its members, and to the *St. Petersburg Times* . . . ." (Dkt. 37, ¶¶ 43, 44). Exhibit A to the Second Amended Complaint includes various documents, including a letter to Plaintiff from the DOJ explaining its reasons for recommending his termination, as well as documents demonstrating how that letter came into the possession of the FFJNC.[10]

Construing Plaintiff's allegations liberally, he essentially complains of two distinct disclosures of allegedly protected matters. First, he alleges that O'Neill disclosed protected information pertaining to Plaintiff in his U.S. Attorney application, and because O'Neill used a DOJ

---

[10] Attachments to a complaint are considered part of the pleading for all purposes, including a Rule 12(b)(6) motion. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007), *cert. denied*, 553 U.S. 1004 (2008). Where an exhibit contradicts the allegations of a complaint, the exhibit controls. *Id.*

computer and word processing equipment to prepare the application, the DOJ and Holder are liable

for that alleged disclosure. More specifically, Plaintiff alleges that O'Neill "utilized computer and

word processing equipment of the DOJ, invoked the name and official actions of the DOJ in his

application for appointment, and was aided and abetted by the DOJ in making the said application

for appointment." (Dkt. 37, ¶¶ 13, 15-17) ("Operating in tandem with Defendant O'Neill, Defendant

Holder (responsible for the actions of the EOUSA and Ms. Rita M. Sampson, Esquire) released

Privacy Act protected . . . information into the public domain . . . .").

This theory of liability, frivolous on its face, does not state a claim for relief under the

Privacy Act. Nothing described in the Second Amended Complaint as having been disclosed in

O'Neill's application is alleged to have been, nor could have constituted, a record of Plaintiff from

a "system of records" under the control of an agency which would be protected by the Privacy Act.

5 U.S.C. § 552a(a)(5) (Act defines a "system of records" as a "group of any records under the control

of any agency from which information is retrieved by the name of the individual or by some

identifying number, symbol, or other identifying particular assigned to the individual."). Simply put,

these allegations do not allege any facts supporting a plausible claim for relief against the DOJ or

Holder under the Privacy Act.

Second, Plaintiff alleges that Holder, through DOJ attorney Rita Sampson, published

"Privacy Act protected documents in the public domain [and] . . . to the U.S. Merit Systems

Protection Board in the matter of <u>Del Fuoco v. U.S. Department of Justice</u> AT-0752-06-0562-I-1,"

and that those documents ultimately came into the possession of a private individual (Eric J.

Engberg) and the Chairman of the FFJNC (John M. Fitzgibbons) (Dkt. 37, ¶¶ 31-33). One of the

documents alleged to have been wrongfully disclosed is the June 17, 2005 letter from DOJ addressed

to Plaintiff recommending that he be terminated as an Assistant United States Attorney  and explaining the reasons for that recommendation. As noted, the letter is attached to the Second Amended Complaint as part of Exhibit A (Dkt. 37-1).[11]

Specifically, Plaintiff alleges that the termination letter was among documents furnished by Sampson "to the United States Merit Systems Protection Board in the matter of *Del Fuoco v. U.S. Department of Justice*, AT-0752-06-0562-I-1." (Dkt. 37, ¶ 31).[12]  Indeed, Plaintiff's allegations expressly allege that it was the Merit Systems Protection Board, rather than these Defendants, which disclosed the letter to Engberg. The documents attached to the Second Amended Complaint confirm this.

The various documents attached to the Second Amended Complaint as Exhibit A explain how the letter came into the possession of Engberg and Fitzgibbons. (Dkt. 37-1).  Engberg's transmittal letter to Fitzgibbons expressly states that Engberg received the letter from the United States Merit Systems Protection Board pursuant to his Freedom of Information Act request:

> I filed a Freedom of Information Act request with the MSPB for all the documents related to the case. In response, *the Board sent me a document* that had not been previously disclosed, captioned a 'Proposal of Removal,' issued June 17, 2005, by the Executive Office for U.S. Attorneys, signed by Kelly E. Shackelford.

(Dkt. 37-1, p. 1) (emphasis added).

---

[11]  With respect to the documents, including the termination letter, Plaintiff alleges that "Mr. Eric J. Engberg came into possession of a portion" of them and "republished and disseminated them" to Fitzgibbons, the Chairman of the FFJNC, who in turn distributed a copy to the 56 members of the FFJNC and the *St. Petersburg Times*. (Dkt. 37, ¶ 32-37).  Generally, materials received by the FFJNC are to be "made available to the general public." (Dkt. 40-1, Exh. 2, Rule 23).

[12]  It can be reasonably inferred from the allegations and exhibits attached to the Second Amended Complaint that the letter was furnished by the DOJ incident to Plaintiff's administrative appeal to the United States Merit Systems Protection Board seeking review of the circumstances under which he resigned from the Department of Justice. Indeed, Plaintiff attaches to the Second Amended Complaint as part of Exhibit A his July 20, 2005 resignation letter and the decision of the United States Merit Systems Protection Board dismissing the administrative appeal, which expressly references the termination recommendation as  "Agency response File, Tab 4c". (Dkt. 37-1, p. 22 of 24).

A review of the allegations supporting Plaintiff's purported Privacy Act claim(s) confirms Defendants' contention that the claim(s) are facially insufficient. The only disclosure Plaintiff alleges these Defendants were responsible for was the disclosure of the termination letter to the United States Merit Systems Protection Board incident to Plaintiff's appeal from what he claimed was his involuntary resignation. Not only was that disclosure mandated by regulation, it was invited by Plaintiff by virtue of his appeal.

Defendants first contend that the Privacy Act counts do not state claims for relief that are plausible on their face.[13] The Court agrees. In order to state a valid claim under the Privacy Act, a plaintiff must establish four elements:

> (1) the government failed to fulfill its record-keeping obligation; (2) the agency acted intentionally or willfully in failing to perform its obligation; (3) the failure proximately caused an adverse effect on an individual; and (4) that individual suffered actual damages.

*Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d at 1381 (quoting *Fanin v. U.S. Dep't of Veterans Affairs,* 572 F.3d 868, 872 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 1755 (2010)).

In summary, Plaintiff must plead that DOJ failed to fulfill its record-keeping obligation, did so deliberately, Plaintiff suffered an adverse effect from the disclosure, and actual damages. *Id.* More than mere conclusions are required. The allegations must proffer enough factual content to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[13] Defendants contend that Plaintiff fails to allege that "any allegedly Privacy Act protected information was retrieved from a system of records maintained by DOJ and indexed by Del Fuoco's name." (Dkt. 40, p. 24). Although the termination letter is undoubtedly a "record" as defined in 5 U.S.C. § 552a(a)(4), Plaintiff does not expressly allege that the termination letter came from a "system of records." *See* 5 U.S.C. § 522a(a)(5). Notwithstanding, liberally construing the Second Amended Complaint, it is apparent that DOJ considered the letter to be protected by the Privacy Act, considering that it was stamped "Confidential and Privacy Act Sensitive." Plaintiff's allegations, although hardly a model for pleading a Privacy Act claim, are minimally sufficient in this regard.

First, Defendants correctly argue that DOJ is not liable for the actions of Engberg and Fitzgibbons, as private individuals, as the Privacy Act applies to governmental agencies of the United States as opposed to private individuals. Likewise, Defendants correctly point out that Plaintiff alleges that the Merit Systems Protection Board, rather that DOJ, provided the subject letter to Engberg, who in turn provided it to Fitzgibbons, who in turn distributed it to the 56 members of the FFJNC and ultimately the *St. Petersburg Times*. Defendants also point out that DOJ's disclosure to the Merit Systems Protection Board was mandated by regulations governing the Merit Systems Protection Board, specifically 5 CFR § 1201.25(c).

Plaintiff's theory of liability is premised on DOJ's failure to obtain Plaintiff's consent before disclosing the termination letter to the Merit Systems Protection Board. (Dkt. 37, ¶ 44 (Defendants "failed to secure written authorization from Plaintiff . . . prior to releasing the specific information . . ."). Yet, it was Plaintiff's appeal to the Merit Systems Protection Board which triggered the DOJ's disclosure of the termination letter. Indeed, in responding to Plaintiff's appeal, DOJ was required to furnish "all documents contained in the agency record of the action." 5 CFR § 1201.25(c).[14]

Plaintiff fails to allege how DOJ's compliance with the mandated disclosure constituted a deliberate violation of its record-keeping obligations. In order to state a valid claim under the Privacy Act, Plaintiff must plead and ultimately prove that DOJ's disclosure of the termination letter was intentional or willful. This requires a showing of conduct more extreme than gross negligence, such as "patently egregious and unlawful," "flagrantly disregarding others' rights under the Act," or "reckless." *Andrews v. Veterans Admin. of U.S.*, 838 F.2d 418, 425 (10th Cir. 1988), *cert. denied*,

---

[14] *See* 5 U.S.C. § 1204(h) and § 7701(k).

488 U.S. 817 (1988) (examining and drawing from legislative history of the Privacy Act). More specifically, Plaintiff must demonstrate that DOJ intentionally or willfully failed to perform its record-keeping obligation. *Speaker, supra.* As a matter of law, Plaintiff is unable to do so. DOJ's compliance with the regulation mandating disclosure to the Board effectively negates the requisite element of intent or willfulness for a Privacy Act claim, which did not require Plaintiff's consent, which is implied by virtue of his appeal.

Defendants next argue that Plaintiff's allegations of damage do not sufficiently allege "actual damages." A claim under the Privacy Act requires a Plaintiff to plead and prove "actual damages," that is, pecuniary loss, as opposed to "generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin v. U.S. Dep't of Veterans Affairs,* 572 F.3d at 872-73. While Plaintiff alleges that he suffered "pecuniary loss" as a result of the claimed Privacy Act violations, he alleges no factual support for those allegations (Dkt. 37, ¶¶ 28, 39). As with each element of a cause of action under the Privacy Act, Plaintiff must allege more than conclusions. *Speaker,* 623 F.3d at 1381. In this regard, Plaintiff alleges that he "has suffered adverse and harmful effects, including but not limited to mental and emotional distress, trauma, extreme embarrassment, humiliation and lost or jeopardized present or future employment and financial opportunities, including his ability to provide for his family . . . ." (Dkt. 37, ¶ 45).

Plaintiff's generalized allegation of damage does not satisfy this Circuit's requirement of pecuniary loss. His vague reference to "lost or jeopardized present or future employment and financial opportunities" does not describe a pecuniary loss beyond the speculative or conceivable, and certainly does not cross the line from possibility to plausibility. Beyond the labels, Plaintiff alleges nothing demonstrating that he suffered an actual pecuniary loss as a result of the alleged

violation of the privacy Act. While he is not required to allege "detailed factual allegations," he

must allege "more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.

Ct. at 1949.

In sum, the allegations supporting Plaintiff's Privacy Act claim(s) in Counts Fifty-Seven

through Fifty-Nine do not satisfy the requirement that Plaintiff allege a plausible claim for relief.

### Count Sixty

In Count Sixty, Plaintiff purports to state an independent claim for civil contempt pursuant

to 18 U.S.C. § 401(3), based on alleged disclosure of grand jury material by the DOJ, through Holder

and Sampson. (Dkt. 37, ¶¶ 46-48). Defendants contend that Count Sixty should be dismissed

because "there is no cause of action for civil contempt for a violation of Fed. R. Crim. P. Rule 6(e)."

(Dkt. 40, p. 2). Defendants are correct.

As an attorney and a former Assistant United States Attorney, Plaintiff should know that in

this Circuit, "there is no such thing as an independent cause of action for civil contempt . . . ."

*Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir. 1988). The cases on which Plaintiff relies

involve targets of grand jury investigations who sought injunctive relief to prevent grand jury secrecy

violations. *In re grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir. 1980); *United States v.*

*Eisenberg*, 711 F.2d 959 (11th Cir. 1983). This Circuit recognizes that "*Lance* stands for the

proposition that a *target* may bring suit for injunctive relief against the individuals subject to Rule

6(e)(2) and may invoke the district court's contempt power to coerce compliance with any injunctive

order the court grants." *Blalock,* 844 F.2d at 1551 (emphasis added). Plaintiff does not allege that

he was a target of a grand jury investigation. Indeed, the disclosures about which he complains, as

summarized in his June, 2005 termination letter, involved matters he investigated as an Assistant

United States Attorney.

This Court acknowledges that "[a] prima facie showing of a Rule 6(e) violation requires the district court to entertain the petition and order the government to take steps to stop any publicity emanating from its employees." *Eisenberg*, 711 F.2d at 964. Assuming that Plaintiff has standing to seek injunctive relief for violations of Rule 6, he is still required to make out a prima facie case, and his petition is subject to dismissal if he has not. *Blalock*, 844 F.2d at 1551 (If the target's proffer fails to establish a prima facie case, the court must dismiss the target's Rule 6(e)(2) case without an evidentiary hearing.). In determining whether a prima facie case has been made, the court considers, among other factors:

> (1) whether there is "a clear indication that the [disclosure involved] 'matters occurring before the grand jury,' " (citation omitted); (2) whether it appears that the disclosure was made by a person subject to Rule 6(e)(2)'s requirement of secrecy; (3) whether the relief requested will interfere with the grand jury proceedings; and (4) whether the government has sufficiently rebutted the target's showing.

*Id.*

Here, Plaintiff's proffer consists solely of the June, 2005 termination letter, which does not make out a prima facie Rule 6(e)(2) violation. That letter focused on Plaintiff's conduct, without "revealing what had transpired, or will transpire, before the grand jury." *Id.* at 1551. Nor does it establish ongoing grand jury proceedings. Civil contempt proceedings are intended to be coercive. Here, there is nothing to coerce. Plaintiff simply seeks to invoke the Court's civil contempt power to punish those who he believes violated grand jury secrecy rules years ago. Count Sixty is therefore subject to dismissal.

## Conclusion

While Plaintiff is not required to prove any of his claims at this juncture, he is required to state plausible causes of action, which he has not done, and cannot do. The Second Amended

Complaint is therefore subject to dismissal in its entirety, as Plaintiff can prove no set of facts that would entitle him to relief on any of his claims.[15]   Accordingly, the  Motion to Dismiss Second Amended Complaint by Robert E. O'Neill and United States Department of Justice (Dkt. 40) is **GRANTED**.

**DONE AND ORDERED** this ___11th___ day of February, 2011.


                                        _____
                                        **JAMES D. WHITTEMORE**
                                        **United States District Judge**


Copies to:
Plaintiff
Counsel of Record

---

[15] The Second Amended Complaint is Plaintiff's third attempt to state a claim, although his First Amended Complaint was dismissed without prejudice as a sanction. (Dkts. 1, 12, 33).